IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

TONI GRIFFIN, )
)
      Plaintiff, )
)
v. )   CIVIL ACTION NO. 19-0561-MU
)
ANDREW M. SAUL, )
Commissioner of Social Security, )
)
      Defendant. )

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Toni Griffin brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for Supplemental Security Income ("SSI"), based on disability. (Doc. 1). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 20 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See* Doc. 23. Upon consideration of the administrative record, Griffin's brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

---

[1] The parties waived oral argument. (Doc. 19).
[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 20 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

## I.  PROCEDURAL HISTORY

Griffin applied for SSI, based on disability, under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383d, on January 25, 2017. (Tr. 169-74). Her application was denied at the initial level of administrative review on May 23, 2017. (Tr. 96-100). On June 13, 2017, Griffin requested a hearing by an Administrative Law Judge (ALJ). (Tr. 107-09). After a hearing was held on August 2, 2018, the ALJ issued an unfavorable decision finding that Griffin was not under a disability from the date the application was filed, January 19, 2017. (Tr. 20-29). Griffin appealed the ALJ's decision to the Appeals Council, which denied her request for review of the ALJ's decision on July 1, 2019. (Tr. 1-6). After exhausting her administrative remedies, Griffin sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on November 25, 2019. (Docs. 11, 12). Both parties have filed briefs setting forth their respective positions. (Docs. 16, 22). The parties waived oral argument. (Doc. 19). After careful consideration, for the reasons set forth below, the Court finds that the decision of the Commissioner is due to be affirmed.

## II.  CLAIMS ON APPEAL

Griffin alleges that the ALJ's decision to deny her benefits is in error for the following reasons: 1) the ALJ failed to express legitimate reasons supported by the record for giving little weight to the Medical Source Statement prepared by Dr. Judy Travis, a treating physician; 2) the ALJ failed to consider all of her severe impairments; and 3) the ALJ's residual functional capacity (RFC) determination was not supported by substantial evidence. (Doc. 16 at p. 2).

## III. BACKGROUND FACTS

Griffin was born on June 25, 1970 and was 46 years old at the time she filed her claim for benefits. (Tr. 191). Griffin initially alleged disability due to left shoulder pain, pain running up and down her left arm, and non-stop pain and pressure in her neck area. (Tr. 195). Griffin did not complete high school but did earn her GED. (Tr. 42-43). She studied Business Technology after obtaining her GED but did not complete her Associate's degree. (Tr. 43). She worked part time at Marengo Café from approximately 2013 until May of 2016 when it closed and she reportedly became unable to work any longer. (Tr. 43-45). She has also worked previously as a line inspector and box packager at Prista Packaging and as a button machine operator at New Era Cap. (Tr. 43-44). She testified that she could no longer work due to neck pain, radiating pain coming from her shoulder, and numbness and tingling in her hands. (Tr. 45, 48). She further testified that she took over-the-counter pain medication for the neck pain during the time she was working. (Tr. 46). In April of 2018, she started taking Lortab and a medication for depression. (Tr. 46). In her Function Report which was completed on March 3, 2017, Griffin stated that she can handle much of her own personal care if she does it slowly; that she does not take care of anyone else or any pets, that she can cook quick meals and larger meals about twice per week; that she can do the laundry, but has to do it at a slow pace; that she walks outside daily; that she shops online once a week for 30 minutes; that she can pay bills, count change, handle a savings account, and use a checkbook and money orders; that she spends time with others talking and at church but cannot go to events that she used to go to because of the shoulder pain; and that she has no problems finishing what she starts, following instructions, getting along

with authority figures, and handling changes in routine. (Tr. 203-10). She has a driver's license and drives about twice per week. (Tr. 42). Griffin claims that she is unable to work due to the limitations caused by her neck and shoulder pain and the numbness and tingling in her hands.

## IV. ALJ'S DECISION

After conducting a hearing on this matter, the ALJ made a determination that Griffin had not been under a disability since the date the application was filed, and thus, was not entitled to benefits. (Tr. 29). At step one of the five-step sequential evaluation, the ALJ found that Griffin had not engaged in SGA since January 19, 2017, the application date. (Tr. 22). Therefore, she proceeded to an evaluation of steps two and three. The ALJ found that, during the relevant period, Griffin had severe impairments of degenerative disc disease, cervical spine and degenerative disc disease, but that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 22-24). After considering the entire record, the ALJ concluded that Griffin had the RFC to perform a range of light work, except that she would be allowed to alternate positions once every hour for 5 minutes while remaining at her workstation and without increasing time off task; could occasionally balance, stoop, and crouch; could never kneel, crawl, climb ramps or stairs, or climb ladders, ropes, or scaffolds; could frequently reach except never overhead; could not perform work that requires repetitive motions with her left upper extremity; could frequently finger, feel, handle, and grasp; would avoid frequent exposure to extreme cold, wetness, and humidity; would avoid frequent exposure to vibration; would avoid all exposure to hazards, such as unprotected heights and

4

dangerous machinery; and would miss 1 to 2 days of work per month. (Tr. 24-27). After setting forth her RFC, the ALJ determined that Griffin was unable to perform any past relevant work. (Tr. 27). However, considering her age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Griffin could perform, and therefore, found that Griffin was not disabled within the meaning of the Act. (Tr. 28-29).

## V. DISCUSSION

Eligibility for SSI benefits requires that the claimant be disabled. 42 U.S.C. § 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

5

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted).  "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

In this case, Griffin argues that the ALJ erred for the following reasons: 1) the ALJ failed to express legitimate reasons supported by the record for giving little weight to the MSS prepared by Dr. Judy Travis, a treating physician; 2) the ALJ failed to

consider all of her severe impairments; and 3) the ALJ's residual functional capacity (RFC) determination was not supported by substantial evidence. (Doc. 16 at p. 2). The Commissioner, on the other hand, asserts that the ALJ provided valid reasons for her findings, that those findings are supported by the applicable law and by substantial evidence, and that the ALJ's conclusion that Griffin was not disabled was not in error. (Doc. 22).

**A.  Weight Given to the Opinion of Dr. Travis**

Griffin argues that the ALJ erred because she failed to express legitimate reasons supported by the record for giving little weight to the MSS prepared by Dr. Judy Travis, a treating physician. The relevant social security regulations provide that medical opinions are weighed by considering the following factors: 1) whether the source of the opinion examined the claimant; 2) whether the source treated the claimant and, if so, a) the length of the treatment relationship and the frequency of examination and b) the nature and extent of the treatment relationship; 3) the supportability of the opinion with relevant evidence and by explanations from the source; 4) the consistency of the opinion with the record as a whole; 5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and 6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6); *see also Nichols v. Comm'r, Soc. Sec. Admin.*, No. 16-11334, 2017 WL 526038, at * 5 (11th Cir. Feb. 8, 2017) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)) (stating that "[i]n determining how much weight to give a medical opinion, the ALJ considers such factors as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization").

In the instant case, the ALJ provided a full review of the medical evidence in her Decision. The ALJ stated:

> In terms of the claimant's many noted complaints, the undersigned finds that the preponderance of the evidence does not support these. A review of the medical record reveals that the claimant had been under treatment many years before the alleged onset date for hand and shoulder pain. An EMG/NCS from 2010 showed no definitive evidence of left cervical radiculopathy of brachial plexopathy. Ex. 1F/25. Moderate CTS was assessed (Ex. 1F/25), and an MRI revealed only "possible" bursitis. Ex. 2F/13. Beginning around the time of the alleged onset date, in September 2016, the claimant presented to the Perret Clinic and complained of shoulder pain. Ex. 3F/7. Notably, this was her only reported symptom on review of systems. *Id.* at 8. Her review of systems was otherwise completely normal, including neurologically and psychiatrically. *Id.* Contrary to testimony offered at the hearing (Testimony), the claimant did not complain of any neck pain or muscle aches. *Id.* Her objective physical examination was likewise completely normal, including gait, neurological functioning, and psychiatric functioning, apart from subjective tenderness in her left shoulder. *Id.* "No pain was elicited by motion of the shoulder." "No sensory exam abnormalities were noted." Ex. 3F/9.
>
> One month before the alleged onset date, the claimant complained of shoulder pain, but the claimant's clinician noted that except for "spasm" at the left paracervical muscle, "overall findings were normal." Ex. 3F/5. Her report of systems was otherwise normal, and no abnormalities, mental or physical, apart from "spasm", were objectively identified. *Id.* at 3-6. (The claimant was neurologically normal with a normal gait; she was alert and oriented). Notably, an X-ray of the claimant's left shoulder was without bony abnormalities. *Id.* at 6.
>
> A consultative examination in April 2017 (Ex. 4F) revealed a history of over-the-counter medication for pain, and no hospitalizations. Ex. 4F/3. The claimant complained of aching cervical pain with radiation to her left upper extremity, but no headaches. Ex. 4F/3. The claimant's extremities displayed no edema, cyanosis, or clubbing. (page 4.) "Good bilateral hand strength" was noted. *Id.* The claimant had no significant deficits in range of motion of the upper or lower extremities, and only shoulder abduction and elevation were reduced. The claimant had a normal gait and was able to heel/toe walk and tandem walk. (Page 4). No muscle atrophy was noted. *Id.* A straight leg raise test was negative bilaterally. *Id.* She was alert and oriented; no motor weakness was noted. No sensory deficits were noted. She was able to make a fist and oppose her

thumb and first finger bilaterally. (page 5.) No mental impairments were assessed. Under impression, the doctor wrote, "the patient does not qualify for disability at this time." Ex. 4F/5.

In May 2017, the claimant presented to Maurice J. Fitz-Gerald, M.D. (Ex. 6F/16). She presented with complaints of shoulder pain. *Id.* Examination showed tenderness and pain with shoulder range of motion testing, but "overall normal" findings with regard to her other major motor groups. Ex. 6F/18. No sensory abnormalities were noted. *Id.* Upon follow-up on August 26, 2017, inspection showed lumbosacral spasm and tenderness, and subjective tingling in the claimant's hands (Ex. 6F/14), but by follow-up exam on November 18, 2017, the claimant had returned to baseline and "examination of her hands" was noted to be *"perfectly normal.* (Emphasis added.)" Ex. 6F/10. On examination at this provider, the claimant has demonstrated normal ambulatory status, no edema, no cervical masses, and no decrease in neck suppleness. She is always alert, oriented, and without abnormalities with regard to her head or psychiatric functioning. *See, generally,* Ex. 6F.

In April 2018, the claimant began treatment with Judy Travis, M.D., a family medicine practitioner. Her chief complaint was left shoulder and left hip/leg pain. Muscle spasm, tenderness, and decreased range of motion of the cervical spine were noted on exam. Ex. 7F/4. Decreased range of motion of the left shoulder due to spasms with marked loss of the lordotic curvature was also noted but she exhibited no swelling, good muscle mass bilaterally, full range of motion of all other joints, including her right shoulder, and no other noted abnormalities. Ex. 7F/4, 5. She was neurologically intact. The treatment provider refers to imaging showing moderate to severe degenerative changes in the claimant's lumbar spine and loss of the lordotic curvature of the cervical spine (Ex. 7F/5), but the actual imagining was not made part of the record. A June follow-up visit records identical findings. Ex. 9F/5.

The undersigned acknowledges that during two recent examinations the claimant's doctor recorded findings relating to her back and neck. At the same time, however, no other clinician who examined the claimant over two years of treatment observed such findings or even recorded complaints associated with these conditions upon reviews of systems. At many examinations, the claimant denied problems with her back and neck or even a history of such problems. Upon consultative examination, the claimant had a normal gait, no muscle atrophy, and a negative straight leg raise test. Ex. 4F/4. No sensory deficits were noted. The claimant alleged, at the hearing, that she suffered from eight (8) headaches per week. By contrast, the claimant has submitted no medical or other records demonstrative of such frequent headaches. The medical record does not contain any references to such a problem,

9

> nor are there records relating to treatment for carpal tunnel syndrome. To the extent that the recent findings on examination can be accepted, it is also logical and consistent to accept that the claimant can perform work at the light exertional level, but with certain postural and other non-exertional limitations (as set forth above). The undersigned does not find the claimant to be more limited.
>
> The record contains a medical source statement from Dr. Travis. Ex. 8F. The undersigned has given careful consideration to this opinion, but finds this opinion worthy of little weight. The claimant saw Dr. Travis only a few times, and only very recently, *i.e.,* approximately two years after the alleged onset date and only a few months before the disability hearing. Moreover, the symptoms and limitations suggested in Dr. Travis' medical source statement are either not corroborated by the other treatment notes or flatly contradicted by them. No other treating source during the pertinent period, for example, identified the claimant to have significant problems with her neck or back. In sum, Dr. Travis' medical source statement in check-box form, with no narrative explanation, and completed after only two visits, is given no weight.
>
> Much more weight is given the opinion of the State agency medical consultant (Ex. 1A), which is supported by the findings upon examination at Exhibits 3F, discussed *infra,* and the findings upon consultative examination (Ex. 4F), which are also given great weight to the extent consistent with the findings herein.

Tr. 25-27.

Determination of whether a claimant is disabled from doing gainful work is an issue reserved to the Commissioner, and a doctor's opinion on that issue can be disregarded. *See Lowery v. Berryhill*, Civ. A. No. 4:16-cv-00913-AKK, 2017 WL 1491274, at *3 (N.D. Ala. Apr. 26, 2017) (citing *Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834 (11th Cir. 2017) ("the determination of whether an individual is disabled is reserved to the Commissioner, and no special significance will be given to an opinion on issues reserved to the Commissioner.")); *see also Green v. Soc. Sec. Admin.,* 223 F. App'x 915, 923 (11th Cir. 2007) (holding that "the ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ).

10

In addition, a physician's opinion as to a claimant's ability to work is not entitled to recognition from an ALJ if the opinion is not supported by or consistent with the totality of the evidence. *Id.* "In assessing whether a claimant is disabled, an ALJ must consider the medical opinions in a case record *together with the rest of the relevant evidence received.*" *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 870 (11th Cir. 2016) (citing 20 C.F.R. § 404.1527(b)) (emphasis added). The ALJ is to consider the claimant's daily activities when evaluating the symptoms and severity of an impairment. *Id*. at 871 (citing 20 C.F.R. § 404.1529(c)(3)(i)). "[T]he more consistent an opinion is with the record as a whole, the more weight the ALJ will give to that opinion." *Id.* (citing 20 C.F.R. 404.1527(c)(4)).

Although the opinions of treating physicians are generally entitled to substantial or considerable weight, the ALJ does not have to give a treating physician's opinion considerable weight if good cause is shown to the contrary. *See Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit "has concluded 'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41. Also, if the claimant's own testimony regarding the claimant's daily activities contradicts the consulting physician's opinion, the ALJ's decision not to give the physician's opinion considerable weight is not in error. *See Chambers*, 662 F. App'x at 872. Indeed, "an ALJ may reject any medical opinion if the evidence supports a contrary finding." *Nichols,* 2017 WL 526038, at *5 (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). In this case, Dr. Travis, who examined Griffin twice, issued a medical source statement in

11

which she opined, *inter alia*, that Griffin could only sit for four hours and stand and walk for one hour total during an eight-hour workday, could only occasionally push and pull leg controls, never balance, and could frequently reach overhead. (Tr. 422-23). Review of the medical records and Griffin's written and oral testimony supports a finding that Dr. Travis's opinions were contrary to the opinions of the other treating, consultative, and reviewing physicians. For example, no other evidence supports a finding that Griffin's ability to sit, stand, or walk is affected by her neck and shoulder problem. Therefore, the Court finds that substantial evidence supported the ALJ's finding that Dr. Travis's opinions that were expressed in the Medical Source Statement were not in line with Griffin's own testimony, Dr. Travis's own reports, or the record as a whole. Accordingly, the Court finds that the ALJ did not err in assigning no weight to the Medical Source Statement.

**B. <u>Severe Impairments</u>**

Secondly, Griffin argues that the ALJ failed to consider all of her severe impairments, specifically her bilateral carpal tunnel syndrome, degenerative disc disease in her lumbar spine, rotator cuff tendonitis, or Os acromiale. (Doc. 16 at pp. 11-13). With regard to her alleged disabling impairments of degenerative disc disease in her lumbar spine, rotator cuff tendonitis, or Os acromiale, the Court finds no error because Griffin did not allege these impairments in the disability applications or reports she submitted to the Agency or at the hearing before the ALJ, where she was represented by counsel. The Eleventh Circuit has held that an ALJ "is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability. *Street v. Barnhart*, 133 F. App'x

621, 627 (11th Cir. 2005) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)); *see also Robinson v. Astrue*, 365 F. App'x 993, 994-96 (11th Cir. 2010) (ALJ did not err in finding CFS was not a severe impairment when the plaintiff did not allege she was disabled due to CFS in her application or at the administrative hearing).

The Court need not determine whether the ALJ correctly concluded that her carpal tunnel syndrome was not severe under the circumstances presented here. As noted above, step two of the sequential analysis requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments. *See Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015); *Watkins*, 457 F. App'x at 870 (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips*, 357 F.3d at 1237). A "finding of **any** severe impairment, whether or not it results from a single severe impairment or a combination of impairments that together qualify as 'severe,' is enough to satisfy step two." *Id*. (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)) (emphasis added). "Based on [Eleventh Circuit] precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at step two." *Tuggerson-Brown v. Comm'r of Soc. Sec.,* 572 F. App'x 949, 951-52 (11th cir. 2014).  Here, the ALJ found that Griffin did have severe impairments that limited her to light work with additional limitations. (Tr. 16). Griffin has offered no evidence and, therefore, failed to prove that that her carpal tunnel syndrome has caused additional limitations on her ability to work. In her brief, Griffin mentions that this condition affects her ability to lift certain things; however, she has failed to show that these affects were not taken into consideration in her RFC which limits her to light work. Accordingly, the Court finds that, even if the ALJ erred by finding that her carpal tunnel

syndrome was a non-severe impairment at step two, any such error was harmless because the ALJ considered all impairments in formulating her RFC.

## C. Residual Functional Capacity Determination

Griffin also argues that the ALJ's RFC determination was not supported by substantial evidence. "In assessing whether a claimant is disabled, an ALJ must consider the medical opinions in a case record together with the rest of the relevant evidence received." *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 870 (11th Cir. 2016) (citing 20 C.F.R. § 404.1527(b)). In addition to the medical evidence, the ALJ is to consider the claimant's daily activities when evaluating the symptoms and severity of an impairment. *Id*. at 871 (citing 20 C.F.R. § 404.1529(c)(3)(i)). A thorough review of the ALJ's decision reveals that the ALJ in this case did take into consideration, not only medical opinion evidence, but the totality of the medical evidence, as well as Griffin's written and oral accounts of her daily activities. (Tr. 22-27). After doing so, the ALJ restricted Griffin to light work with a litany of further restrictions that took into account all of her physical impairments. As noted above, in her decision, the ALJ included a thorough discussion of the medical evidence. (Tr. 25-27). She reviewed examination notes from the various doctors, complaints reported to the doctors by Griffin, the findings of objective testing, treatment recommendations, and statements made by the physicians concerning limitations and restrictions.

A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any

related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. It is well-settled that the ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other experts. *See* 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v. Colvin*, Civ. A. No. 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC").

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)). Based on the Court's review of the record and the ALJ's

15

decision, the Court finds that the ALJ did so here. It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the transcript and considered the arguments made by Griffin, the Court finds that the ALJ's determination that Griffin was not disabled is supported by substantial evidence and based on proper legal standards. *See, e.g., Lynn v. Comm'r of Soc. Sec.,* 791 F. App'x 888, 889 (11th Cir. 2020) (finding that substantial evidence supported ALJ's denial of benefits when portions of physician's opinion were disproportionate to objective findings, claimant received only conservative and routine treatment from general practitioners, and claimant had the ability to operate a motor vehicle, prepare meals, perform household chores, do laundry, and groom herself).

## CONCLUSION

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **1st** day of **October, 2020**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**